**Laura Beth NORWOOD, Appellant,**

**v.**

**L. E. HARLOW, Administrator, Estate of W. M. Bielss, Deceased, Appellee.**

**No. 16930.**

Court of Civil Appeals of Texas.

Fort Worth.

May 24, 1968.

Rehearing Denied June 21, 1968.

Harry Hopkins and James M. Cotten, Weatherford, for appellant.

Fulgham & Grogan and Frank E. Fulgham, Weatherford, for appellee.

OPINION

RENFRO, Justice.

Suit was brought by Laura Beth Norwood against L. E. Harlow, administrator of the estate of W. M. Bielss in an attempt to prove an agreement and contract between W. M. Bielss and Dezzie E. Bielss, both deceased, under which they executed a joint and mutual will, by the terms of which plaintiff was bequeathed Mrs. Bielss' one-half interest in the community property.

The court instructed a verdict for defendant and entered a take nothing judgment against plaintiff.

Plaintiff predicates her appeal on points of error complaining of the refusal of the court to admit a carbon copy of an alleged will in evidence, and of the court's holding there was no evidence to establish the execution of a contract between Will and Dezzie Bielss.

Mrs. Dezzie E. Bielss died in March of 1961.

W. M. Bielss died in January, 1966. No children were born of their marriage and they did not adopt any children.

Mrs. Norwood attempted to prove that Mr. and Mrs. Bielss had, prior to the death of Mrs. Bielss, executed a joint and mutual will under the terms of which Mrs. Norwood, who was a niece of Mrs. Bielss, would receive one-half of the estate remaining after the death of the survivor.

There is in the record an abundance of evidence that Mr. and Mrs. Bielss contemplated making a will. After the death of Mrs. Bielss, however, no will was probated. Immediately after the death of Mr. Bielss a thorough search was made of the Bielss' home and no will was found. Bielss' box at the bank was examined. There was no will therein, or anywhere else in the bank.

There was testimony that, prior to his death, Mr. Bielss had burned a will and never made another.

In an effort to prove the Bielsses had executed a joint and mutual will, appellant offered an unsigned carbon copy of a will in evidence. Objections to its admission were sustained.

Appellant called as a witness the Honorable W. H. Hutcheson, eminent attorney of Weatherford. The witness testified: he had never met Mrs. Bielss; Mr. Bielss came to his office on one occasion and said he and his wife wanted a joint will; he prepared a will; he did not remember the provisions of the will; he gave the unsigned will to Mr. Bielss to take home and never saw it again; he could not identify the proffered copy as a copy of the will he prepared; he kept a copy of the instrument he prepared for Mr. Bielss but "it got away from me and I never got it back"; he could not recall what Mr. Bielss told him he wanted in the will, except he wanted some part to go to Mrs. Bielss' niece and some part to some other niece; witness could not remember the names; as far as the witness knew the instrument he prepared was never executed.

A witness who was Hutcheson's secretary in 1960 had no recollection of preparing a will for Bielss and could not identify the copy.

There was testimony in the record that Bielss had told someone the will had been executed by both Bielsses and witnessed by Attorney Hutcheson and bank president J. W. Ford. Ford testified that Bielss told him at one time he was thinking about making a will, but Ford never saw a will, and had no recollection of witnessing the signing of a will by the Bielsses. As previously stated, Hutcheson never saw the unsigned instrument after he delivered it to Bielss and had no recollection of ever witnessing a will for the Bielsses.

Eighteen witnesses testified. Only Hutcheson had seen the unsigned will which he delivered to Bielss. None of the other seventeen witnesses had ever seen the unsigned instrument and none of them had

ever seen a will of any kind purporting to have been executed by the Bielsses.

■ Since we are dealing with an instructed verdict, we will consider the testimony of the appellant's witnesses as true.

Due to inconsistent and contradictory statements made by some witnesses, and our uncertainty as to whether some testimony was or was not admitted in evidence, we should perhaps interpolate the words, "at least," before each of the "numbers" in the ensuing paragraph.

Five witnesses, all relatives or close friends, who saw the Bielsses often, never heard either Bielss mention a will. Three witnesses heard Mrs. Bielss say they had made a will in favor of two nieces, or that she wanted Laura Beth to have her half of the property. One witness heard Bielss say he was going to make a will. Four witnesses heard Bielss say he had made a will. Four witnesses heard both Bielsses say they had made a will with Laura Beth one of the beneficiaries. One witness said Bielss told him he and his wife had made a will or wills to each other.

The above is presented as a substantially correct shorthand rendition of all the material testimony in the record.

Mrs. Bielss told at least two witnesses Mr. Hutcheson and Mr. Ford had witnessed the will. As heretofore stated, neither Hutcheson nor Ford remembered witnessing a will for the Bielsses.

■ We believe the evidence falls short of proving, or raising a jury issue, that the will prepared by Hutcheson was ever executed by the Bielsses. The court did not err in refusing to allow the proffered carbon copy in evidence.

Section 59, V.A.T.S., Probate Code, provides that "Every last will and testament, except where otherwise provided by law, shall be in writing and signed by the testator in person or by another person for him by his direction and in his presence,

and shall, if not wholly in the handwriting of the testator, be attested by two (2) or more credible witnesses above the age of fourteen (14) years who shall subscribe their names thereto in their own handwriting in the presence of the testator."

Since appellant failed to prove that the "Hutcheson" will was ever executed in accord with the above law, it was incumbent upon her to prove that some other joint and mutual will under which she would take an interest in the property was actually executed by the Bielsses.

No one ever saw a will executed by the Bielsses. It may be they did execute a will or thought they had executed a will "to Beth." The testimony does not establish that they executed any will.

■ One who relies upon a will as a contract has the burden of proving that the will is contractual as well as testamentary in character. Proof may be made by the provisions of the will itself or by competent witnesses who testify to the agreement; and evidence as to declarations of the promisor, relations or conduct of the parties and other facts and circumstances that tend to prove that an agreement was made, are admissible. Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165 (1946).

■ The evidence in this case is perhaps sufficient to present a jury issue as to whether the Bielsses made an agreement to will the property to the two nieces, but, there is insufficient evidence to support a finding that such agreement, if made, was consummated by incorporating it in a contractual joint and mutual will.

■ The appellant had the burden of proving that the Bielsses executed a will in conformance with law, and in this she failed.

"At the heart of a mutual will lies a contract of the parties." Weidner v. Crowther, 157 Tex. 240, 301 S.W.2d 621 (1957).

There being no competent evidence of probative force to establish a mutual will and contract, the action of the court in instructing a verdict for defendant is affirmed.

Affirmed.