Daniel MOSSLER et al., Appellants,

v.

Norman JOHNSON et al., Appellees.

No. 17067.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

March 23, 1978.

Rehearing Denied April 20, 1978.

John H. Holloway, Kenneth H. Knop, Houston, for appellants.

Lackshin & Nathan, Bernus Wm. Fischman, Marvin D. Nathan, A. R. Schwartz, Houston, for appellees.

EVANS, Justice.

Daniel Mossler and Christopher Mossler, two adopted children of Candace Mossler, deceased, appeal from a summary judgment denying their application to probate an instrument which they contend is their mother's last will and testament. The appellees, Rita Johnson Wilder and Norman Johnson, are the decedent's natural children who filed a contest to the application for probate.

The instrument offered for probate is a photostatic reproduction of what purports to be a conformed copy of a prior will of the decedent dated September 3, 1968. It is the position of the appellants, as proponents of the instrument in question, that on June 8, 1976, their mother caused certain changes to be made on the conformed copy of her prior will, and after executing the revised instrument as her will, had the instrument attested by her daughter, Rita Wilder, and by her physician, Dr. Harvey Esrov. In the appellees' contest and in their motion for summary judgment, it is alleged that the instrument dated June 8, 1976, is invalid as a will for the reason that the signature of only one subscribing witness, Harvey Esrov, appears on the document and that the other alleged witness, Rita Wilder, did not subscribe her name as a witness.

The trial court's summary judgment recites its finding that the will had not been executed with the formalities required by law in that it did not have the signature of the requisite two witnesses required by Section 59, Texas Probate Code, and declares that the order is final for the purposes of appeal.

In their first point of error, the appellants contend that the summary judgment was not a final order under Section 5, Texas Probate Code. Under this point, appellants argue that the testator's original will dated September 3, 1968, had been admitted to probate under an interlocutory order which had preserved for trial the validity of a 1975 codicil to that will, and it is their position that the summary judgment is interlocutory since it only determined the validity of the June 8, 1976, document and did not decide the over-all question of which of the instruments was entitled to probate as the decedent's last will and testament.

An appeal is authorized in a probate matter if brought from a judgment which finally disposes of and is conclusive of the issue or controverted question for which that particular part of the proceeding was brought. *Fischer v. Williams,* 160 Tex. 342, 331 S.W.2d 210, 213 (1960). The judg-

ment may be final for purposes of appeal even though the decision does not fully and finally dispose of the entire probate proceeding. *Kelley v. Barnhill,* 144 Tex. 14, 188 S.W.2d 385, 386 (1945).

■ An application for probate of a will presents the question of whether an instrument is entitled to probate as the unrevoked last will and testament of the decedent. *Tips v. Yancey,* 431 S.W.2d 763 (Tex.1968). That issue may be finally determined by the entry of a judgment denying an application for probate, notwithstanding that an application for probate of another instrument may remain pending on the court's docket. *Cherry v. Reed,* 512 S.W.2d 705 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n. r. e.). The judgment in the case at bar is final and appealable since it effectively determines the basic controverted issue between the parties as to the validity of the instrument dated June 8, 1976. *Currie v. Drake,* 550 S.W.2d 736, 739 (Tex.Civ.App.—Dallas 1977, writ ref'd n. r. e.). The case of *Stutts v. Stovall,* 531 S.W.2d 690 (Tex.Civ.App.—San Antonio 1975, writ ref'd n. r. e.), relied upon by the appellants, is inapplicable to the case at bar. In *Stutts,* the order expressly provided that a fact issue remained as to whether the appellant had made an election not to take under the will. Thus, the order in that case was clearly interlocutory and was not subject to review by appeal. The appellants' first point of error will be overruled.

In their second and third points of error, the appellants contend that the trial court erred in entering the summary judgment denying probate of the instrument in question on the basis of the lack of the two attesting witnesses' signatures.

■ In order for an instrument to be entitled to probate as a will under Section 59, Texas Probate Code, if it is not wholly in the handwriting of the testator, it must be attested by two or more witnesses "who shall subscribe their names thereto in their own handwriting in the presence of the testator."

The instrument in question is nine legal-size pages in length. The last page of the instrument contains the conformed attestation provisions, indicating a typewritten date of September 3, 1968, and typewritten signatures for the testator and the original subscribing witnesses. On page 3 of the document there appears the handwritten date of June 8, 1976, the signature of the testator, Candace Mossler, and the handprinted names of Norman Johnson and Rita Wilder. In the left hand margin, under the handprinted designation "witness", appears the signature and handprinted name of Dr. Harvey Esrov. The instrument offered for probate shows the relative location of the handwritten notations made on page 3:

one-half (1/2) at age fifty (50); and all of the Trust Estate remaining at age fifty-five (55). If the person for whom a trust is created dies before receiving all of such Trust Estate, upon his or her death such Trust Estate shall be distributed to such persons' issue, but if none of such persons' issue is then living, to my issue. During the term of each Trust, the Trustee may distribute to the person for whom such Trust was created, such amounts of the income or principal, or both, of such Trust Estate as, in the discretion of the Trustee, are in the best interests of the distributee, taking into account his or her age, the costs of his or her comfort, support, maintenance and education, and any other factors deemed relevant by the Trustee.

June 8, 1976

WITNESS

HARVEY ESROV

IV.

I appoint TEXAS NATIONAL BANK OF COMMERCE, NORMAN - JOHNSON 9 RITA WILDER of Houston, Texas, and _____, of Miami, Florida, as Independent Executors under this Will and of my estate, and Trustees of all trusts created herein. No bond or other security shall be required of any Executor or Trustee. My Executors shall be independent of the supervision and direction of all courts to the full extent permitted by law. I direct that no action shall be had in any court of probate jurisdiction in connection with this Will or in the administration and settlement of my estate, other than the probating and recording of this Will and the return of an inventory, appraisement, and list of claims of my estate. All

C M

It is the appellees' position that the undisputed deposition testimony of the two alleged witnesses, Rita Wilder and Dr. Harvey Esrov, conclusively establish that Rita Wilder did not subscribe her name as an attesting witness to the instrument. Appellants contend, on the other hand, that the deposition testimony does not support the trial court's judgment and, to the contrary, shows as a matter of law that the testator executed the instrument in the presence of the two witnesses and that both witnesses attested the execution of the instrument by subscribing their names in their own handwriting in the presence of the testator.

Rita Wilder testified that the 1976 instrument was executed while her mother was in

**956**

the hospital. Her mother wanted to review her will and bring it up-to-date. In particular, her mother wanted the name of her attorney, Mr. Al Pallot, stricken as one of the executors. Rita Wilder picked up a conformed copy of the will from the attorney's office in downtown Miami and delivered it to her mother at the hospital. Several days later, her mother found that she needed to have a test with possible adverse consequences, and she became quite concerned about the test and about the release which the hospital wanted her to sign. As her mother was being prepared for the test, she asked Rita Wilder to go back to her room and to bring her the will, which she did. Her mother then asked her to strike out Mr. Pallot's name and to insert in lieu thereof the names "Norman Johnson and Rita Wilder." She did as her mother asked, and her mother then asked to "let her sign it." Her mother wanted the instrument witnessed and did not want to have the test without having first made the changes in the will. When her mother took possession of the instrument, she was present in the room, but she could not remember whether Dr. Esrov was present at that time. Her mother took the instrument from her and said "show me the part about Al Pallot. Find that paragraph for me." She showed her mother the paragraph, and her mother said "scratch his name out and put yours and Norman's there and let me sign it." She scratched out Mr. Pallot's name and wrote Norman Johnson and Rita Wilder above that in her own handwriting, and made no other changes before handing the instrument back to her mother. She put the date June 8, 1976, on the instrument, either before or after her mother signed the instrument. Dr. Esrov then signed the instrument and Rita Wilder asked him to spell his name because his signature was illegible. She then wrote out his name underneath his signature. She could not recall whether the date was placed on the instrument before or after her mother signed it, but the date and her mother's signature were on the instrument at the time Dr. Esrov signed his name. She could not recall whether the changes were made

in the doctor's presence because he was coming in and out of the room, preparing for the test. She said she personally saw her mother place her signature on the instrument and that her mother had specifically directed her where the changes were to be made. She believed that "the entire changes" in her handwriting were on the instrument when her mother personally signed her name to it in her presence and in the presence of Dr. Esrov. Rita Wilder asked Dr. Esrov "will you please witness her signature", but she could not recall if she said "to the will." She testified that she wrote the word "witness" followed by a colon with double lines underneath that word, but she could not recall whether or not the doctor had already signed his name to the instrument. She said her mother was in the room at that time.

Dr. Esrov identified his signature on the instrument as that immediately above the printed words Harvey Esrov and below the word witness. He testified that when he placed his signature on the instrument, he and Mrs. Mossler's daughter were present in the room and that prior to the time that he signed his name, he saw Mrs. Mossler place her signature in paragraph IV immediately under the date June 8, 1976. Prior to the time Mrs. Mossler signed her name to the instrument, her daughter, acting at her request, made certain changes in paragraph IV. After those changes were made and the instrument was dated, Mrs. Mossler or her daughter requested that he witness the instrument. He placed his signature on the instrument after Mrs. Mossler had placed her signature under the date. He did not recall whether the word "witness" was on the instrument when he signed it, but he did sign the instrument after Mrs. Mossler signed it, and either he or Mrs. Mossler's daughter then printed his name under his signature.

It is immaterial where the attesting witnesses sign their names upon a written will, so long as they do so for the purpose of attesting the instrument as subscribing witnesses. *Fowler v. Stagner*, 55 Tex. 393 (1881); *Franks v. Chapman*, 64

Tex. 159 (1885). When doubt exists concerning the purpose of the witnesses' signatures, the testimony of the attesting witnesses may serve to explain the reason for their signatures. *Mortgage Bond Corp. v. Haney,* 105 S.W.2d 488, 491 (Tex.Civ.App.—Beaumont 1937, writ ref'd).

"It seems fairly clear that an irregular or anomalous signature must be explained by the testimony of the attesting witnesses themselves or by the testimony of some other person. A signature appearing in the margin of the instrument, opposite an alteration, would doubtless not be acceptable in the absence of testimony showing an intent to attest the entire will." Bailey, 9 Texas Practice, Wills § 279 (1968).

It is the appellants' burden, as proponents of the instrument offered for probate, to prove the execution of a valid will. *Perritte v. Birdwell,* 539 S.W.2d 95 (Tex.Civ.App.—Tyler 1976, no writ). However, as movants for summary judgment, the appellees had the burden of establishing, as a matter of law, that appellants could not meet this burden of proving a valid will at a trial on the merits. *Citizens First Nat'l Bank v. Cinco Exploration Co.,* 540 S.W.2d 292 (Tex.1976).

An examination of page 3 of the document in question reveals the handprinted name of Rita Wilder at a location in the body of the instrument rather than in a place indicated for the witnesses' attestation. Thus, the document itself is consistent with and corroborative of the testimony given by Rita Wilder that her purpose in placing her name on the instrument was not to attest to its execution but rather to comply with her mother's instructions that she designate herself and her brother as the named co-executors. Although Rita Wilder is an interested party to the transaction, her testimony was not contradicted by the testimony of Dr. Esrov or by other evidence in the case. To the contrary, Dr. Esrov's testimony is corroborative of Rita Wilder's version of the transaction, indicating that her purpose in handprinting her name in the body of the instrument was to comply with her mother's request that she change the names of the designated co-executors. Thus, the summary judgment proof conclusively established the absence of any factual dispute as to the purpose of Rita Wilder in placing her name on the instrument, and the trial court was justified in concluding, as a matter of law, that she had not subscribed her name to the instrument as an attesting witness to its execution.

The question of whether the subscribing witness to a will did, in fact, attest the execution of the instrument in the presence of the testator is generally a matter to be determined by the trier of fact. *Allen v. Nesmith,* 525 S.W.2d 943 (Tex.Civ.App.—Houston [1st Dist.]), writ ref'd n. r. e. per curiam 531 S.W.2d 330 (Tex.1975). However, where the evidence is legally insufficient to support a finding that the instrument was attested as required by law, the question becomes one of law for the court. *Norwood v. Harlow,* 429 S.W.2d 670 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n. r. e.). On the record presented, the trial court did not err in concluding, as a matter of law, that the instrument in question had not been executed by two subscribing witnesses as required for probate under the provisions of Section 59, Texas Probate Code.

The judgment of the trial court is affirmed.